FILED
2019 Aug-26 PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | | |
|---|---|---|
| RICHARD MARVIN THOMPSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No.: 4:19-cv-00120-AKK-HNJ |
| | ) | |
| JONATHAN HORTON, et al., | ) | |
| | ) | |
| Respondents. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Richard Marvin Thompson ("Thompson" or "Petitioner") instituted this action against Respondents on January 22, 2019, by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). The court referred the petition to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b) for preliminary review.

Immigration authorities issued an administrative removal order against Thompson, and the First Circuit Court of Appeals previously denied Thompson's petition to review the administrative order. Thompson's current appeal in the First Circuit involves review of a motion to reopen his removal proceedings, and therewith the First Circuit granted a stay of removal.

In his petition, Thompson contends he suffers prolonged confinement in violation of the Fifth Amendment's Due Process Clause due to a mandatory detention purportedly authorized by 8 U.S.C. § 1226(c). Section 1226(c) governs removal

proceedings for immigrants who have perpetrated particular crimes. The Respondents counter that they detain Thompson pursuant to the detention provisions of 8 U.S.C. § 1231, which governs the detention of immigrants subject to removal orders after initial administrative proceedings have concluded. According to Respondents' contention, circuit precedent construing § 1231 forestalls his challenge to detention until the First Circuit has adjudicated his latest appeal of the removal ordered by immigration administrators.

In *Zadvydas v. Davis*, 533 U.S. 678, 699, 701 (2001), the Supreme Court determined 8 U.S.C. § 1231 implicitly incorporates a limit on indefinite detentions for aliens subject to final removal orders, yet any such prolonged detention does not manifest until the expiration of a six-month period of confinement. Eleventh Circuit precedent in *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 n. 4 (11th Cir. 2002), provides that an appellate challenge to a removal order or a stay of removal interrupts the six-month detention period triggered by § 1231. Thompson challenged his removal order within six months of his detention, and the First Circuit subsequently stayed Thompson's removal, so *Akinwale* commands his detention until his six-month clock has recommenced and expired. Therewith, Thompson has not suffered prolonged detention due to *Akinwale*'s strictures.

Therefore, for the reasons stated more fully herein, the undersigned recommends the court **DISMISS** Thompson's petition **WITHOUT PREJUDICE** and **DENY** his motion for hearing.

## I. Factual and Procedural History

The United States admitted Thompson, a native and citizen of Jamaica (Doc. 1 at 4), as a lawful permanent resident on August 28, 1997, pursuant to a petition by his father, a Connecticut resident who had recently obtained U.S. citizenship. (*Id.*). On July 9, 2001, an 18-year old Thompson pleaded guilty to second-degree assault and received a five-year sentence and three years' probation. (*Id.*) (citing Conn. Gen. Stat. Ann. § 53a-60(2)).

On January 25, 2012, the Department of Homeland Security ("DHS") issued Thompson a Notice to Appear ("NTA"), charging him with removability "under 8 U.S.C. §§ 1227(a)(2)(A)(iii) (conviction of "crime of violence" aggravated felony) and (i) (conviction of crime of moral turpitude within five years of admission for which a sentence of one year or more may be imposed), based on his 2001 assault." (*Id.* at 5)(footnote omitted). On February 28, 2012, Immigration and Customs Enforcement ("ICE") arrested Thompson and detained him pending a hearing. (Doc. 7-1 at ¶ 6).

On June 18, 2013, an Immigration Judge ("IJ") in Boston, denied Thompson's claim of derivative citizenship and ordered him removed to Jamaica. (Doc. 1 at 5; Doc. 7-1 at ¶ 7). On July 17, 2013, Thompson appealed his Order of Removal to the Board of Immigration Appeals ("BIA"). (Doc. 7-1 at ¶ 8).

On March 25, 2014, Thompson filed a petition for writ of habeas corpus with the Massachusetts District Court, which he withdrew on May 29, 2014. (Doc. 7-1 at ¶ 9). On July 3, 2014, Thompson posted bond, ICE released him from custody, and he

returned to Connecticut, where he maintains deep and extensive family ties and sustains a long history of gainful employment as a commercial truck driver. (Doc. 1 at 6, 8; Doc. 7-1 at ¶ 10). On July 23, 2014, the BIA dismissed Thompson's appeal of the Order of Removal. (Doc. 7-1 at ¶ 8).

On August 14, 2014, Thompson filed a Petition for Review ("PFR") with the First Circuit Court of Appeals. (Doc. 1 at 6; Doc. 7-1 at ¶ 11). On December 29, 2015, the First Circuit denied the petition. *Thompson v. Lynch*, 808 F.3d 939 (1st Cir. 2015)(holding Thompson's claim of derivative citizenship failed because he did not established under pertinent Jamaican law that his parents maintained a legally recognized relationship from which they could legally separate). At that juncture, ICE directed Thompson to report periodically to the local ICE office. (Doc. 1 at 6).

On March 21, 2017, ICE Enforcement and Removal Operations ("ERO") arrested Thompson pursuant to the Order of Removal and detained him at the Franklin Detention Center in Greenfield, Massachusetts. (Doc. 7-1 at ¶ 14). On March 28, 2017, Thompson filed a motion to reopen[1] the Order of Removal with the BIA and Motion for Stay of Removal. (*Id.* at ¶ 15). On April 3, 2017, ICE forwarded

[1] According to Respondents, between October 6, 2014, and October 17, 2016, Thompson filed -- and the BIA dismissed -- two Motions to Reconsider ("MTR"). (Doc. 7-1 at ¶¶ 12-13). Without explaining any particulars, Thompson admits he engaged in litigation before the BIA during this time period and does not expressly dispute Respondents' characterization of this litigation (or any other motion he filed before the BIA) as motions for reconsideration. (Doc. 1 at 5). Because this court may take judicial notice of its own records, *see United States v. Glover*, 179 F.3d 1300, 1302 n. 5 (11th Cir. 1999), and the records of other federal courts, *see* Fed. R. Evid. 201(b), the undersigned has determined that at least one of these motions constituted a motion to reopen. *see Thompson v. Sessions*, No. 17-1804 (1st Cir. May 18, 2018), ECF doc. 00117291326.

a travel document packet to the Consul General of Jamaica in Miami, Florida. (*Id.* at ¶ 16). The Consul General refused to issue travel documents because Thompson stated he had filed a PFR with the Second Circuit Court of Appeals,[2] although, as previously reviewed, he had filed only the motion to reopen with the BIA. (*Id.*). On April 26, 2017, the BIA denied the stay request, which ICE officials forwarded to the Jamaican Consulate. (*Id.* at ¶ 17). On May 5, 2017, the BIA dismissed the motion to reopen. (*Id.* at ¶ 15).

On May 22, 2017, Thompson filed a PFR and Emergency Stay of Removal with the Second Circuit Court of Appeals, *see Thompson v. Sessions*, No. 17-1645 (2nd Cir. 2017), ECF. 19. In this second PFR, Thompson again argued that he derived citizenship from his father. *Thompson v. Sessions*, No. 17-1804 (1st Cir. *judgment*, May 18, 2018), ECF doc. 00117291326. On May 24, 2017, the Second Circuit transferred the PFR and Thompson's request for "emergency stay of removal . . . to the First Circuit, which is the proper venue." *Id.* Due to this PFR filing, on May 25, 2017, ICE removed Thompson from a scheduled Jamaican charter flight. (Doc. 7-1 at ¶ 19).

On June 17, 2017, ICE transferred Thompson to the Etowah County Detention Center in Gadsden, Alabama. (*Id.* at ¶ 20). On July 10, 2017, Thompson received a Post Order Custody Review ("POCR"), and on July 26, 2017, ICE's New Orleans Field Office continued his detention. (*Id.* at ¶ 21). On August 29, 2017, ICE

---

[2] Notably, in the Second Circuit, "the Government's forbearance policy assures that the [mere] filing of a motion for stay of removal . . . suffice[s] to prevent removal." *Efstathiadis v. Holder*, 752 F.3d 591, 599 n. 5 (2nd Cir. 2014).

forwarded a travel document packet to the Consul General of Jamaica in Miami, Florida, and on September 18, 2017, the Consul General conducted a telephonic interview with Thompson. (*Id.* at ¶¶ 22-23). On March 2, 2018, ICE forwarded a travel document status letter to the Consul General of Jamaica in Miami. (*Id.* at ¶ 24).

On March 14, 2018, Thompson filed a "motion to reopen and terminate his removal case" with the BIA, claiming that "[o]n December 6, 2017, the Connecticut Board of Pardons and Paroles granted [him] a full and unconditional pardon for his 2001 second-degree assault conviction." (Doc. 1 at 6; Doc. 7-1 at ¶ 25).[3] The same day, Thompson received a POCR by ICE Headquarters Removal and International Operations ("HQRIO"), and on March 27, 2018, he received the decision that his detention would continue. (*Id.* at ¶ 26). On April 5, 2018, the Consul General of Jamaica conducted a telephone interview with Thompson, and on May 11, 2018, ERO received the travel document. (*Id.* at ¶¶ 27-28).

On May 18, 2018, the First Circuit denied Thompson's second PFR. *See Thompson v. Sessions*, No. 17-1804 (1st Cir. 2018), ECF No. 00117291326. The Court held that "[t]he motion to reopen here was both time- and number-barred, and none of the exceptions to the time and number requirements are applicable." *Id.* at 1. The Court also held that Thompson's derivative citizenship argument had been fully

---

[3] Title 8 U.S.C. § 1227(a)(2)(A), mandates that an alien receive a waiver of deportability for an "aggravated felony" or "crime of moral turpitude" conviction if he "has been granted a full and unconditional pardon by the President of the United States or by the Governor of any of the several States."

litigated and decided against him on December 29, 2015, and "cannot be re-litigated here." *Id.*

On May 29, 2018, Thompson filed a PFR and Motion for Stay with the Seventh Circuit Court of Appeals. (Doc. 7-1 at ¶ 29). On June 2, 2018, that Court denied the request for emergency stay and ordered Thompson to show cause why the petition should not be dismissed for lack of jurisdiction. *Thompson v. Sessions*, No. 18-2185 (7th Cir.), ECF doc. 5. On June 7, 2018, the Seventh Circuit denied Thompson's application to proceed in *forma pauperis* and directed him to the pay the filing fee. *Id.* On June 12, 2018, ICE submitted Thompson's expired travel document to the Consul General of Jamaica for renewal. (Doc. 7-1 at ¶ 30).[4] Thompson did not respond to the Seventh Circuit's show cause order and did not pay the requisite filing fee. On July 24, 2018, the Seventh Circuit dismissed the PFR for lack of prosecution due to failure to pay the filing fee as ordered. *Thompson*, No. 18-2185, ECF doc. 8.

According to Thompson, on August 7, 2018, the BIA denied his motion to reopen and terminate his removal on the grounds that it

> is time-and number-barred, and on the grounds that he did not show that he is entitled to a pardon waiver under the INA because the Connecticut Board of Pardons and Paroles derives its authority from the legislature, not the executive (citing, *inter alia, Matter of Nolan*, 19 I&N Dec. 539 (BIA 1988)), and based on insufficient evidence, because [Thompson] submitted an uncertified copy of his pardon certificate.

---

[4] The document remains viable for a period of only 30 days, and Jamaica issued the pertinent travel document on May 11, 2018.

(Doc. 1 at 6). Thompson "subsequently supplemented his motion with a certified copy of his pardon certificate." (*Id.*).

On August 28, 2018, Thompson filed a third PFR with the First Circuit Court of Appeals, this time seeking review of the BIA's denial of his motion to reopen based on his Connecticut pardon. (*Id.* at 7). On September 13, 2018, the Court granted a Stay of Removal and denied the Government's motion to dismiss the PFR. (Doc. 1 at 7; Doc. 7-1 at ¶¶ 31-32).

On January 22, 2019, Thompson filed his 28 U.S.C. § 2241 habeas petition. (Doc. 1). Respondents answered the Court's order to show cause regarding Thompson's habeas petition on February 25, 2019. On March 26, 2019, Thompson filed an amended traverse, and on July 18, 2019, a "Motion for Hearing." (Docs. 12 & 13). On July 23, 2019, the First Circuit heard oral argument from the parties and amicus. *See Thompson v. Barr*, No. 18-1823 (1st Cir. 2018), ECF docket summary.

SDDO North attests that the Jamaican Government has strong ties with the United States Government "and supports the issuance of travel documents to return their repatriates as quickly as possible." (Doc. 7-1 at ¶ 34). She declares the Jamaican Government issues around 60 travel documents monthly and that "[r]epatriates to Jamaica are returned monthly via United States Government aircraft." (*Id.*).

## II. Analysis

Thompson claims "the pre-removal period statute, 8 U.S.C. § 1226," governs his detention, and, by extrapolation, his prolonged detention without a bond hearing under that statute violates the Fifth Amendment's Due Process Clause. (Doc. 12 at 2).[5] Respondents argue 8 U.S.C. § 1231, and its construal by *Zadvydas v. Davis*, 533 U.S. 678 (2001), governs Thompson's detention (Doc. 7 at 1), now close to two and half years. Thompson proclaims that even if the court accepts Respondents' position, he is nonetheless entitled to habeas relief in the form of release or an individualized bond hearing pursuant to *Zadvydas*, as otherwise "his detention under Section 1231 violates due process." (Doc. 12 at 2). Respondents retort that Thompson's "constitutional due process claims are foreclosed by the posture of his case and his inability to demonstrate that his removal is not likely to occur in the reasonably foreseeable future." (Doc. 7 at 1-2). As the following analysis portrays, Respondents prevail based upon applicable circuit precedent.

The United States' immigration authorities sought to remove Thompson based upon relevant provisions of 8 U.S.C. §§ 1226 and 1227. Immigration authorities may

---

[5] In his petition, Thompson claimed he was bond-eligible pursuant to 8 U.S.C. § 1226(a), and not subject to mandatory detention under 8 U.S.C. § 1226(c)(1), because ICE took him into "custody years after the triggering criminal offense, for which he never served a custodial sentence." (Doc. 1 at 11-13; Doc. 12 at 1). In his amended traverse, Thompson concedes the United States Supreme Court's recent decision in *Nielsen v. Preap*, __ U.S.__, 139 S. Ct. 954 (2019), forecloses that claim. (Doc. 12 at 1). In *Preap*, the Court held that § 1226(c)'s mandatory detention requirement is not limited to situations in which a covered alien is taken into custody by immigration officials as soon as the alien in released from criminal custody. 139 S. Ct. at 963-67, 968-72. That is, § 1226(c)'s mandatory detention provision applies even if ICE does not detain an immigrant immediately after authorities issue a removal order.

seek to remove an alien if he falls into one or more classes of deportable aliens as described in 8 U.S.C. § 1227(a), including those who have committed certain criminal offenses such as aggravated felonies or crimes of moral turpitude. *See* 8 U.S.C. § 1227(a)(2)(A)(i) & (iii). Thompson's criminal conviction for second degree assault subjected him to the strictures of § 1227.

Section 1226, which governs the detention of admitted aliens subject to § 1227 removal proceedings due to commission of pertinent crimes, establishes that the "Attorney General shall take into custody" any such alien, and the authorities may release such aliens "only if the Attorney General decides . . . that release of the alien from custody is necessary" for witness-protection purposes and "the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(2). The Supreme Court construed this provision as carving out "a statutory category of aliens who may *not* be released" pending removal proceedings. *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018) (emphasis in original).

However, the Supreme Court declined to adjudicate whether the provision of mandatory detention pursuant to § 1226 violated the Constitution's Fifth Amendment Due Process Clause and remanded the case for such a determination. *Jennings*, 138 S. Ct. at 851.[6] Post-*Jennings*, numerous court decisions have recognized due process

[6] In its most recent opportunity to address due process liberty in this context, the Supreme Court again declined to do so, stating:

protection against prolonged detention under § 1226, particularly by the provision of bond hearings, and Thompson primarily beseeches such due process protection given the duration of his confinement and posture of his appeal.[7]

As an initial strike against Thompson's contentions, 8 U.S.C. § 1231 undoubtedly authorized Thompson's post-removal order detention as of December 29, 2015, when the First Circuit denied Thompson's PFR regarding the administrative order of removal. Sections 1231(a)(1) and (2) provided that the Attorney General has 90 days to accomplish the removal of a detained alien subject to a removal order; this 90-day "removal period" begins to run upon the *latest* of the following:

---

> We emphasize that respondents' arguments here have all been statutory. Even their constitutional concerns are offered as just another pillar in an argument for their preferred reading of the language of § 1226(c)—an idle pillar here because the statute is clear. While respondents might have raised a head-on constitutional challenge to § 1226(c), they did not. Our decision today on the meaning of that statutory provision does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it.

*Preap*, 139 S. Ct. at 972.

[7] Indeed, an appreciable number of district court decisions since *Jennings* have ruled that immigrants facing 8 U.S.C. §§ 1225(b) (initial entry) and 1226(c) removal proceedings enjoy due process rights against prolonged detention. *See, e.g., Fremont v. Barr*, 18-CV-1128, 2019 WL 1471006 (W.D.N.Y. Apr. 3, 2019); *De Oliveira Viegas v. Green*, -- F. Supp. 3d --, No. CV 18-13359, 2019 WL 1423781 (D.N.J. Mar. 29, 2019); *Vargas v. Beth*, No. 19-CV-92, 2019 WL 1320330 (E.D. Wisc. Mar. 22, 2019); *Liban v. Secretary of Department of Homeland Security*, No. 18-CV-1843, 2019 WL 1238834 (D. Minn. Mar. 18, 2019); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853 (D. Minn. 2019); *Tuser E. v. Rodriguez*, --F.Supp.3d--, 2019 WL 928419 (D.N.J. Feb. 25, 2019); *Kouadio v. Decker*, 352 F. Supp. 3d 235 (S.D.N.Y. 2018); *Brissett v. Decker*, 324 F.Supp.3d 444 (S.D.N.Y. 2018); *Baez-Sanchez v. Kolitwenzew*, 360 F. Supp. 3d 808 (C.D. Ill. 2018); *Cabral v. Decker*, 331 F. Supp. 3d 255 (S.D.N.Y. 2018); *Lett v. Decker,* 346 F.Supp.3d 379 (S.D.N.Y. 2018); *Perez v. Decker*, No. 18-CV-5279, 2018 WL 3991497 (S.D.N.Y. Aug. 20, 2018); *Destine v. Doll,* No. 3:17-CV-1340, 2018 WL 3584695 (M.D. Pa. July 26, 2018); *Fatule-Roque v. Lowe*, No. 3:17-CV-1981, 2018 WL 3584696 (M.D. Pa. July 26, 2018); *Hernandez v. Decker*, No. 18-CV-5026, 2018 WL 3579108 (S.D.N.Y. July 25, 2018), *appeal withdrawn*, No. 18-2824, 2019 WL 1377025 (2d Cir. Feb. 5, 2019); *Dryden v. Green*, 321 F. Supp. 3d 496 (D.N.J. 2018); *Otis V. v. Green,* No. 18–742, 2018 WL 3302997 (D.N.J. July 5, 2018).

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B)(i)-(iii)(emphasis added). In addition, 8 U.S.C. § 1231(a)(6) permits detention of an alien convicted of a crime [such as Thompson] "beyond the removal period …."[8]

Pursuant to the foregoing statutory provisions, Thompson's order of removal became *administratively* final on July 23, 2014, the date the BIA dismissed his appeal of the IJ's decision to order removal. Section 1231(a) bears the title "Detention and removal of aliens *ordered removed*"; § 1231(a)(2) designates "[t]he date the order of removal becomes administratively final" as providing the "[b]eginning" of a 90-day "removal period" that requires detention; and § 1231(a)(1)(A) & (B) directs removal of an alien with a final order of removal. *See also* 8 C.F.R. § 1241.1(a) (titled "Final order of removal" and providing that an order becomes final "[u]pon dismissal of an appeal by the Board of Immigration Appeals"); *Amaya-Artunduaga v. U.S. Atty. Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) (an alien must exhaust his administrative

[8] This court may not review the merits of the removal order, as that determination falls within the First Circuit's purview. *See* 8 U.S.C. § 1252(a)(5) ("a petition for review in the appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered under any provision of this Act").

remedies by raising issues in the BIA before raising a challenge in the court of appeals in a petition for review).

Between August 14, 2014, and October 16, 2016, Thompson filed an unsuccessful petition for review of the administrative removal order in the First Circuit, and also unsuccessfully utilized the singular statutory opportunities he had to file a motion to reconsider and a motion to reopen with the BIA. *See* 8 U.S.C. § 1252 (granting appellate courts exclusive jurisdiction to conduct "[j]udicial review of orders of removal."); 8 U.S.C. §§ 1229a(b)(6) & (7)(A) (providing for one motion to reconsider and one motion to reopen). Thompson attempted no further litigation of the removal order between October 16, 2016, and his March 21, 2017, detention. Thus, by March 21, 2017, the statutory authority subjected Thompson to an *administrative* and *judicial* final removal order. And by extrapolation, § 1231(a), which provides for the "[d]etention, release, and removal of aliens *ordered removed,*" authorized his detention as of March 21, 2017. *Id.* at 1231(a) (emphasis added).

However, properly framed the crux of the parties' dispute involves Thompson's filing efforts *after* March 21, 2017, particularly whether those efforts reverted statutory authority for Thompson's detention from § 1231(a)'s post-removal order regime back to § 1226(a)'s regime, which, as described previously, governs pre-removal order detention of aliens "pending a decision on whether the alien is to be removed from the United States." The distinction matters, of course, because review of an alleged, prolonged detention diverges between §§ 1226 and 1231. Well-

established precedent and authority emanating from *Zadvydas*, *supra*, governs prolonged detention assessments under § 1231, whereas, as reviewed previously, the Supreme Court's recent decision in *Jennings*, *supra*, left undetermined the constitutional due process regime for prolonged detentions under § 1226.

Thompson does not quarrel with the foregoing characterization, as he readily acknowledges the persistence of *Zadvydas*. Rather, he contends primarily that *Zadvydas* does not apply to his circumstances based upon the plain meaning of § 1231(a)(B). Pursuant to the purported plain-meaning assessment, a removal period does not begin until the latest occurrence of the following triggers: the date of an administrative removal order, or the date of an appellate court's final order upholding an administrative removal order if the appellate court grants a stay of removal during its review. (Doc. 1 at 9-10, ¶ 41). According to Thompson, § 1231's plain meaning posits that it does not govern an immigrant's detention until such removal period commences because the statutory provision mandates detention only during the course of a removal period. (*Id.*); *see also* 8 U.S.C.A. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien.").

Because the First Circuit granted a stay to review the BIA's denial of Thompson's latest motion to reopen, he argues that his removal period will not commence until the First Circuit rejects his motion to reopen and lifts its stay, which would ostensibly constitute a new final order of removal re-triggering his removal period. Therefore, Thompson declares he falls under § 1226, not § 1231, because the

First Circuit presently adjudicates the administrative order denying his motion to reopen and issued a stay to accomplish the review, which purportedly negated any prior removal order (and the prior commencement of his removal period) and relegates him to a pre-removal order status.

Pursuant to established precedent, § 1231, not § 1226, governs Thompson's present detention, and analysis of the applicable precedent demonstrates the court should deny his habeas petition as premature. As countenanced previously, §§ 1231(a)(1) and (2) accord the immigration authorities 90 days to remove an alien subject to a removal order, and § 1231(a)(6) permits detention of aliens convicted of crimes beyond the 90-day period. In *Zadvydas*, the Supreme Court construed these provisions to permit an additional 90 day confinement, beyond the initial 90-day removal period, to accomplish removal. 533 U.S. at 701. Beyond this additional six-month period, the Court determined § 1231 implicitly incorporates a limit on indefinite detentions for aliens subject to final removal orders. 533 U.S. at 699, 701. The Court effected this statutory limitation to avoid the constitutional due process issues implicated by unreasonable, indefinite detentions. 533 U.S. at 690. Therefore,

> After [the initial] 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701.

Thus, to secure release under *Zadvydas,* a petitioner must demonstrate (1) post-removal order detention greater than six months; and (2) no significant likelihood of removal in the reasonably foreseeable future. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). "This six-month period … must have expired at the time [the petitioner's] § 2241 petition was filed . . . to state a claim under *Zadvydas*." *Akinwale,* 287 F.3d at 1052.

Furthermore, application of § 1231 and *Zadvydas* incorporates 8 U.S.C. § 1231(a)(1)(C), which provides that the 90-day removal period under § 1231(a) may be extended when "the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C); *see also, Linares v. Department of Homeland Sec.*, 598 F. App'x 885, 886 (11th Cir. 2015) (petitioner's "'acts to prevent [his] removal subject to an order of removal . . . extended the removal period beyond the 90 days following the finalization of his removal order") (quoting § 1231(a)(1)(C)). Thus, extension of the 90-day removal clock pursuant to § 1231(a)(1)(C) extends the *Zadvydas* clock.

Most importantly, the Eleventh Circuit maintains that an appellate challenge to a removal order or a stay of removal interrupts any initial removal period triggered by § 1231(a)(1)(B)(i). *Akinwale*, 287 F.3d at 1052 n.4. In *Akinwale*, the Court dismissed

the petitioner's habeas action because he filed it four months after the commencement of his removal period. *Id.* at 1052. As the Court discerned, *Zadvydas* requires expiration of the initial, § 1231 six-month removal period before an alien may file a § 2241 habeas petition contesting prolonged detention, *Akinwale*, 287 F.3d at 1052, and as delineated the detention at issue therein had not persisted past that mark at the time the petition was filed. That the six-month period transpired during the pendency of the § 2241 petition and appeal in federal court did not foreclose dismissal of the action as premature. *Id.* The Court also assessed the second prong of the *Zadvydas* inquiry, determining that the § 2241 petition failed to "'present any facts indicating that the INS is incapable of executing . . . removal to [to the pertinent nation of citizenship] and that his detention will, therefore, be of an indefinite nature.'" *Id.* at 1052.

Yet, the Court provided an alternative basis for holding that the petitioner's removal period had not exceeded six months pursuant to *Zadvydas*'s rationale:

> [The petitioner] interrupted the running of time under *Zadvydas* by moving on December 3, 1999, for a stay of deportation in his prior appeal to this Court. The stay was granted on January 10, 2000. *See Akinwale v. Reno,* 216 F.3d 1273 (11th Cir. 2000). Akinwale subsequently filed the § 2241 petition in this case on March 21, 2000. Thus, Akinwale, unlike the aliens in *Zadvydas,* chose to simultaneously challenge issues related to his removal order and his post-removal period detention. *See* 8 U.S.C. § 1231(a)(1)(C) (1999) (stating "removal period shall be extended ... if the alien ... acts to prevent the alien's removal subject to an order of removal"). Therefore, Akinwale did not have even an unencumbered month of detention prior to filing his § 2241 petition, let alone the requisite six months.

*Akinwale*, 287 F.3d at 1052 n. 4.

Therefore, *Akinwale* precludes Thompson's plain-meaning construal of § 1231: when immigration authorities issue administrative final orders of removal, any appellate challenge or stay of such orders tolls the § 1231 six-month period cognized in *Zadvydas*. That is, a PFR or a stay stalls the § 1231 removal period, yet does not effect a reversion of the case's status back to § 1226. Therewith, a considerable number of Eleventh Circuit and District Court decisions have applied the *Akinwale* footnote's holding as precedent. *See, e.g., Guo Xing Song v. U.S. Atty. Gen.*, 516 F. App'x 894, 899 (11th Cir. 2013)(citing 287 F.3d at 1052 n.4) (the six-month *Zadvydas* period "is tolled, however, if the alien acts to prevent his removal"; "at the time [petitioner] filed his petition for review and his appellate brief he had not been detained in excess of six months following the [administrative removal order's] issuance"); *Gozo v. Napolitano*, 309 F. App'x 344, 346 (11th Cir. 2009) (affirming dismissal of habeas petition as premature where alien "interrupted" the removal period for 18 months by seeking withholding of removal after the IJ had ordered removal); *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1363-64 & 1364 n. 4 (N.D. Ga. 2002) (dismissing habeas petition pursuant to *Akinwale* because immigrant's six-month detention and removal period tolled by filing of a PFR, and "holding that it was [not] the actual granting of a stay that prompted the [*Akinwale*] court to conclude that the running of the period of detention had been tolled," but the filing of a PFR); *Atangana v. Zaner*, No. 4:18-cv-02113-ACA-SGC, 2019 WL 22273843 at * 3 (N.D. Ala.

April 16, 2019), *report and recommendation adopted*, No. 4:18-cv-02113-ACA-SGC, 2019 WL 2268993 (N.D. Ala. May 28, 2019) ("a motion to stay removal suspends the presumptively reasonably detention period provided by 8 U.S.C. § 1231(a)"); *Powell v. Holder*, 2013 WL 2635490, at *2 (N.D. Ala. June 10, 2013) ("the *Zadvydas* presumptively reasonable six-month period for removal after issuance of a final order is tolled when an alien requests judicial review of a removal order and a court orders a stay of removal."); *Crooks v. Holder*, No. 4:12–cv–00343–CLS–MHH, 2013 WL 5524135, at *3 (N.D. Ala. Sept. 30, 2013) (relying on *Akinwale* to deem six-month clock "interrupted" by stay pending appeal of removal); *Deacon v. Shanahan*, No. 4:15-CV-00407-CLS-HGD, 2016 WL 1688577, at *5 (N.D. Ala. Apr. 1, 2016), *report and recommendation adopted*, No. 4:15-CV-00407-CLSH-GD, 2016 WL 1639899 (N.D. Ala. Apr. 25, 2016) (habeas petition dismissed because stay of removal and PFR dictated six-month presumptive removal period had not yet begun to run).[9]

---

[9] A cabined interpretation of *Akinwale* may limits its applicability to appellate stays; that is, pursuant to *Akinwale* only stays of removal orders toll the six-month detention removal period. However, as the Eleventh Circuit and district court authority contained in the text elucidate, subsequent decisions extend *Akinwale's* tolling trigger to appellate challenges of removal orders, not just appellate stays. *See, e.g.*, *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1364 n. 4 (N.D. Ga. 2002):

> It is true that Akinwale had sought and received a stay of deportation. It is not clear whether petitioner, here, sought or received a stay from the Circuit when he filed his petition for review with the latter court in March, 2001. Yet, the Court does not read *Akinwale* as holding that it was the actual granting of a stay that prompted the court to conclude that the running of the period of detention had been tolled. Indeed, the statute cited by the panel provides for an extension of the removal period whenever the alien "acts" to prevent his removal, not just when he succeeds. 8 U.S.C. § 1231(a)(1)(C). Moreover, the *Akinwale* panel concluded that less than one month of detention had occurred with regard to the petitioner before them: a calculation that necessarily means that the court was tolling the detention period based on the filing

Applying *Akinwale* to Thompson's petition demonstrates his removal period remains tolled. As previously reviewed, a judicial final order of removal issued on December 29, 2015, occasioned Thompson's arrest on March 21, 2017. Pursuant to § 1231, Thompson's six-month detention removal period commenced on that arrest date. Thompson then tolled his six-month period with the filing of a PFR in the Second Circuit two months later on May 22, 2017, which transferred the PFR to the First Circuit. The First Circuit did not deny Thompson's PFR until May 18, 2018. On the heels of that denial, Thompson filed another PFR with the Seventh Circuit on May 29, 2018. The Seventh Circuit dismissed Thompson's PFR on July 24, 2018. Approximately a month later, Thompson filed the presently-reviewed PFR with the First Circuit on August 28, 2018, and the First Circuit granted a stay of removal on September 13, 2018. In sum, only three and a half months of Thompson's six-month removal have expired due to the tolling effected by the filing of his PFRs and the stay ordered by the First Circuit. Therefore, Thompson filed his habeas petition prematurely pursuant to the rationale in *Akinwale*'s footnote.

Thompson contends *Akinwale*'s proscription constitutes "dicta" because it "is contained in a footnote at the end of the two-page per curium opinion" and devoid of "analysis or authority." (Doc. 12 at 4) (citing *Chavers v Sec'y, Florida Dep't of Corr.*, 468

---

of Akinwale's motion, not the date on which it was granted. Finally, as a practical matter, whether or not stays are actually granted, the Court expects that the INS may often defer deportation where the validity of a deportation decision is before a federal court.

F.3d 1273,1275 (11th Cir. 2006) ("The extraneous language from [a prior case] is not binding on this Court. The holdings of a prior decision can reach only as far as the facts and circumstances frame the precise issue presented in that case."). Contrary to Thompson's contentions, the contested *Akinwale* footnote represents binding precedent in the Eleventh Circuit. As an initial rejoinder, the pertinent *Akinwale* disposition did not merely apply its legal rationale to hypothetical facts or provide guidance to tribunals for future disputes; rather, it applied the *Zadvydas* requirement regarding expiration of the six-month period to specific facts and circumstances presented for adjudication, namely the advent of an appellate stay of the administrative removal order that "interrupted" the removal period. 287 F.3d at 1052 n. 4. Therefore, the adjudication in *Akinwale*'s footnote clearly applied a legal analysis to specific facts and circumstances. *See Chavers*, 468 F.3d at 1275 ("The holdings of a prior decision can reach only as far as the facts and circumstances frame the precise issue presented in that case.").

More generally, a holding yields precedential value when the adjudication is necessary to resolve a case. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound.") (citations omitted); *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 443 (1987) ("The sentence [in a prior decision] relied upon [by petitioners for a contention] is classic *obiter* [*dicta*]: something mentioned in passing, which is not in any way necessary to the

decision of the issue before the Court [in the prior decision].”). Conceivably, the immediately foregoing exposition casts the *Akinwale* footnote holding as dicta, as the Court did not need to render the disposition therein to deny the habeas petition, as reviewed previously.

However, the Eleventh Circuit maintains that alternative holdings in decisions persist as precedent:

> “[A]n alternative holding is not dicta but instead is binding precedent. *See, e.g., Massachusetts v. United States*, 333 U.S. 611, 623 (1948) (explaining that where a case has “been decided on either of two independent grounds” and “rested as much upon the one determination as the other,” the “adjudication is effective for both”); *Richmond Screw Anchor Co. v. United States*, 275 U.S. 331, 340 (1928) (“It does not make a reason given for a conclusion in a case obiter dictum, because it is only one of two reasons for the same conclusion.”); *United States v. Title Ins. & Trust Co.*, 265 U.S. 472, 486 (1924) (“[W]here there are two grounds, upon either of which an appellate court may rest its decision, and it adopts both, the ruling on neither is obiter, but each is the judgment of the court, and of equal validity with the other.”) (quotation marks omitted); *Bravo v. United States*, 532 F.3d 1154, 1162 (11th Cir. 2008) (explaining that an “alternative holding counts because in this circuit additional or alternative holdings are not dicta, but instead are as binding as solitary holdings”); *Johnson v. DeSoto Cnty. Bd. of Comm'rs*, 72 F.3d 1556, 1562 (11th Cir. 1996) (“[W]e are bound by alternative holdings.”); *McLellan v. Miss. Power & Light Co.*, 545 F.2d 919, 925 n.21 (5th Cir. 1977) (en banc) (“It has long been settled that all alternative rationales for a given result have precedential value.”).”

*Evans v. Georgia Reg'l Hosp.*, 850 F.3d 1248, 1255–56 (11th Cir.), *cert. denied*, 138 S. Ct. 557 (2017) (quoting *Hitchcock v. Sec'y, Florida Dep't of Corr.*, 745 F.3d 476, 484 n.3 (11th Cir. 2014). Based upon the foregoing precedent, the holding in the *Akinwale* footnote clearly establishes precedent for this circuit.

To be sure, the other circuits that have addressed this precise issue have adopted Thompson's interpretation of § 1231 and its confluence with § 1226. In *Hecchavaria v. Sessions*, 891 F.3d 49, 57 (2nd Cir. 2018), the Second Circuit rejected the government's argument "that Section 1226 governs only the detention of aliens before a removal order is issued," finding "the plain language of the statute itself" contradicted the government's position. Rather, § 1226 "governs the detention of immigrants who are not immediately deportable." *Id.* The Second Circuit also observed "that all other circuits to have considered this issue," excepting the Eleventh Circuit in *Akinwale*, had "arrived at the same conclusion." *Id.* (citing *Leslie v. Att'y Gen. of the U.S.*, 678 F.3d 265, 270 (3d Cir. 2012), *abrogated in part on other grounds by Jennings*, 138 S. Ct. at 847 ("Our review indicates that every circuit to consider the issue has held that § 1226, not § 1231, governs detention during a stay of removal."); *Prieto–Romero v. Clark*, 534 F.3d 1053, 1057–58 (9th Cir. 2008) (holding that "the Attorney General's statutory authority to detain Prieto–Romero, whose administrative review is complete but whose removal is stayed pending the court of appeals' resolution of his petition for review, must be grounded in § 1226(a)"); *Bejjani v. INS*, 271 F.3d 670, 689 (6th Cir. 2001), a*brogated in part on other grounds by Fernandez–Vargas v. Gonzales*, 548 U.S. 30 (2006), (holding that Section 1231's "removal period" does "not begin until the date of the Court's final order").

Additional authority routinely recognize *Akinwale* as an outlier among circuit courts in the disposition that § 1231, rather than § 1226(c), applies to detentions

persisting during a stay of removal. *See* Maria Baldini-Potermin, Immigration Trial Handbook § 4:13 n. 3 (April 2019) (contrasting *Akinwale* with other circuit court decisions); Dan Kesselbrenner & Lory D. Rosenberg, Immigr. Law & Crimes § 8:12 & n. 123 (Dec. 2018) (contrasting *Akinwale* with other circuit court decisions holding that § 1226(c) "governs noncitizens who have received stays of removal pending judicial review"); Maria Theresa Baldini-Potermin, 90 NO. 47 Interpreter Releases 2383, 2387 & n. 24 (Dec. 16, 2013)(noting the afore-described circuit split); Ian Bratlie & Adriana Lafaille, *A 180-Day Free Pass? Zadvydas and Post-Order Detention Challenges Brought Before the Six-Month Mark, 30 Geo. Immigr. L.J.* 213, 221-22 & n. 47 (2016)(delineating the other circuits' contrary disposition on this issue).

Finally, the undersigned observes that two United States Supreme Court opinions suggest that the Court may find other circuit precedent persuasive regarding the issue at bar. *C.f., Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) ("[T]here is dicta and then there is dicta, and then there is Supreme Court dicta. . . . We have previously recognized that 'dicta from the Supreme Court is not something to be lightly cast aside.'") (citations omitted). In *Jennings*, *supra*, the Court, without discussion, applied § 1226 to an immigrant who challenged his alleged, prolonged detention via a habeas petition while simultaneously securing a stay of removal pursuant to an appellate court review of an administrative removal order. *Jennings*, 138 S. Ct. at 838-39.

In *Nken v. Holder*, 556 U.S. 418 (2009), the Court assessed whether the injunctive relief limits set out in 8 U.S.C. § 1252(f) or traditional stay standards govern an appellate court's authority to grant a stay of removal pending adjudication of a petition for review. In addressing the presented issue, the Court characterized the posture of immigration cases subject to appellate review of administrative removal orders:

> An alien seeking a stay of removal pending adjudication of a petition for review does not ask for a coercive order against the Government, but rather for the temporary setting aside of the source of the Government's authority to remove. Although *such a stay* acts to "bar Executive Branch officials from removing [the applicant] from the country. . . *it does so by returning to the status quo -- the state of affairs before the [administrative] removal order was entered.*

*Id.* at 429 (emphasis added, internal alteration omitted). One notes the procedural posture of the petitioner's case at the time the Court rendered its decision: an appellate petition for review of a third motion to reopen after appellate courts had reviewed the administrative removal order on previous occasions. *Id.*

Notwithstanding the foregoing exposition, the disputed footnote in *Akinwale* persists as Eleventh Circuit precedent which binds this court in its adjudication and applies to Thompson's entreaty. Thus, the six-month *Zadvydas* clock tolled during Thompson's filing of his PFRs and the advent of the First Circuit's stay of removal, and begins to run again if and when the First Circuit lifts its stay. *See Poole v. Streiff*, 2007 WL 2083618, at *1 (S.D. Ala. July 18, 2007) ("By filing a timely appeal to the Second Circuit and obtaining a stay of the removal order, the petitioner effectively

reset the clock, i.e., the commencement period date, to the yet to be determined date of the Second Circuit's final order."); *see also King v. Holder*, 2012 WL 8751662, at *1-*2 (N.D. Ala. Nov. 1, 2012) (Davis, J.) (petitioner's *Zadvydas* period did not begin to run until the appeals court dismissed his PFR, rendering his habeas petition filed prior to the end of that six-month period premature); *Miller v. Gonzales*, 2007 WL 1655575, at *3 (S.D. Ala. June 6, 2007) (same); *Hospedales v. Streiff*, 2007 WL 1628323, at *2 (S.D. Ala. June 4, 2007) (finding "the six-month period of detention deemed presumptively reasonable by the Supreme Court has not yet commenced" where appeal of removal order remained pending).

In addition, the nature of some of Thompson's prior litigation tactics may have extended his removal period pursuant to 8 U.S.C. § 1231(a)(1)(C). Thereto, Respondents argue that Thompson's "continued detention is the result of litigation strategy[,]" particularly regarding the request to stay removal and collaterally challenge his removal order. (Doc. 7 at 15, 17). That is, Respondents claim Thompson "act[ed] to prevent [his] removal" with his litigation challenges and therefore extended the removal period. 8 U.S.C. § 1231(a)(1)(C); *see also Akinwale*, 287 F.3d at 1052 n. 4. Thompson counters that "[s]eeking judicial review," i.e., the "pursuit of legally available avenues to challenge his removal[,] does not constitute the sort of obstructionist acts that would serve to suspend or extend his removal period." (Doc. 9 at 13).

As an initial matter, circuit authority generally supports Thompson on this issue. *See Sopo v. Attorney General*, 825 F.3d 1199, 1218 (11th Cir. 2016), *vacated as moot*, 890 F.3d 952 (11th Cir. 2018)[10] ("[A]liens should [not] be punished for pursuing avenues of relief and appeals.") (citing *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) ("[A]ppeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him.")). "However, the district court may examine the record to determine whether the alien sought repeated or unnecessary continuances, or filed frivolous claims and appeals." *Id.* (citing *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 234 (3d Cir. 2011), *overruling on other grounds recognized by*, *Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 277-79 (3d Cir. 2018)). "Evidence that the alien acted in bad faith or sought to deliberately slow the proceedings in hopes of obtaining release cuts against the alien." *Id.* (citing *Chavez–Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 476 (3d Cir. 2015) ), *overruling on other grounds recognized by*, *Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 277-79 (3d Cir. 2018)); *Ly*, 351 F.3d at 272).

Pursuant to the foregoing authority, a number of Thompson's petitions for review prior to his pardon reflect spurious challenges to his administrative removal order. Thompson filed his May 2017 PFR (initially and improperly filed in the Second

---

[10] Although vacated opinions are void and have no legal effect, the court may give them persuasive value. *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1218 (11th Cir. 2009).

Circuit, but transferred to the First Circuit, the appropriate appellate court) based on derivative citizenship. The First Circuit did not grant a stay, and on May 18, 2018, rejected the PTR as time-barred, number-barred, and precluded on the merits due to that court's prior denial of Thompson's derivative citizenship claim on December 29, 2015.

Notably, Thompson's litigation thwarted his removal from the United States. In April 2017, Thompson informed the Jamaican Consular that he had filed a PFR in the Second Circuit, and in May 2017, he intentionally filed the PFR in the Second Circuit -- clearly the wrong venue yet one that afforded him a forbearance stay of removal. Thompson's action caused a delay in the issuance of his travel documents, and also caused ICE to remove him from a scheduled flight to Jamaica in May 2017.

Thompson also filed a PFR in the Seventh Circuit on May 29, 2018, again clearly in the wrong venue. That Court denied a stay and dismissed the appeal for lack of prosecution on July 24, 2018. This PFR filing coincided with and caused the travel document issued to him on May 11, 2018, to expire on June 11, 2018, which required ICE to recommence the reissuance process anew.

Filing PFRs and motions for stays in courts of appeals that obviously have no jurisdiction to consider the petitions, and filing a PFR that is not only time and number-barred but based on issues previously litigated and rejected, do not constitute good faith challenges. Such dilatory tactics, absent good faith, effectively extended his removal period on several occasions. § 1231(a)(1)(C).

As for the second prong of the *Zadvydas* inquiry, the foregoing discussion renders any such review unnecessary as Thompson has prematurely filed his § 2241 petition pursuant to the dictates of *Akinwale*. Nonetheless, Thompson has not "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" if and when the First Circuit denies the PFR regarding his pardon. *Zadvydas*, 533 U.S. at 701. Thompson does not dispute that Jamaica routinely complies with travel document requests and regularly repatriates its citizens. Indeed, Jamaica has issued travel documents for Thompson on more than one occasion.

In counterpoise, Thompson protests that his removal will not take place in the reasonably foreseeable future because the First Circuit's decision to appoint him pro bono counsel and stay his removal pending review "suggests" the Circuit believes his petition raises "novel and substantial issues" that could conceivably result in the termination of his removal order. (Doc. 1 at 7). While the First Circuit convened oral argument on July 23, 2019, Thompson speculates that it could be many more months before entry of a decision. (Doc. 1 at 7; Doc. 13 at 2). Given the finding on the first prong of the *Zadvydas* inquiry, speculating as to the First Circuit's progress on Thompson's PFR serves no useful purpose. Thompson may relitigate this issue if he suffers an adverse determination on his PFR, but § 1231, as construed in *Akinwale*, commands his detention until that point.

Finally, any due process argument lodged by Thompson falls under *Zadvydas*. Due to the applicability of *Zadvydas* and *Akinwale*, the appropriate inquiry to allay a potential due process violation does not manifest until the six-month period of detention expires. As determined previously, Thompson's six-month period has not expired pursuant to *Akinwale*. Any putative due process regime applicable to § 1226(c)'s mandatory detention provisions does not apply to the *Zadvydas* framework.

## III. Recommendation

Based on the foregoing analyses, the undersigned **RECOMMENDS** the court **DENY** Thompson's motion for hearing, **GRANT** Respondents' motion for summary judgment, and **DISMISS** the petition for a writ of habeas corpus **WITHOUT PREJUDICE**.

## IV. Notice of Right to Object

Any party may file specific written objections to this report and recommendation. Any objections must be filed with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objection. Failure to object to factual findings will bar later review of those findings, except for plain error. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013). Objections also should specifically identify all claims contained in the petition which the report and

recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

On receipt of objections, a United States District Judge will make a *de novo* determination of those portions of the report and recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings of fact and recommendations made by the magistrate judge. The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the magistrate judge with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

**DONE** this 26th day of August, 2019.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE